IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS UNION NO. 98 HEALTH & WELFARE FUND, et al.,**<br><br>Plaintiffs,<br><br>*v.*<br><br>**D'NARPO ELECTRIC, LLC. et al.,**<br><br>Defendants. | CIVIL ACTION<br><br>No. 21-1923-KSM |

### MEMORANDUM

**MARSTON, J.**                                                                                                   **March 10, 2022**

Plaintiffs in this case are the International Brotherhood of Electrical Workers Union No. 98 Health & Welfare Fund ("Health Plan"), the International Brotherhood of Electrical Workers Local Union No. 98 Pension Plan ("Pension Plan"), the International Brotherhood of Electrical Workers Local Union No 98 Profit Sharing Plan ("Profit Sharing Plan"), the International Brotherhood of Electrical Workers Local Union No. 98 Joint Apprenticeship and Training Plan ("Apprenticeship Plan"), the Labor Management Cooperative Committee ("LMCC"), and Local Union 98 of the International Brotherhood of Electrical Workers' ("Union") (collectively "Plaintiffs"). Plaintiffs have moved for default judgment against Defendants D'Narpo Electric, LLC, Marissa Postiglione, Justin Postiglione, Sandy DeMuro, and Domenic DeMuro. (Doc. No. 9). Plaintiffs claim that Defendants breached their fiduciary duties under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29. U.S.C. § 1001 *et seq.*, by failing to remit employee contributions to Plaintiffs. (*See generally* Doc. No. 1.)

For the reasons discussed below, we grant Plaintiffs' Motion for Default Judgment.

I.      **Background**

In their complaint, Plaintiffs seek to recover unpaid principal contributions and damages from Defendants as provided for under ERISA and the Collective Bargaining Agreement ("CBA") between the Union and D'Narpo Electric. (*See generally id.*) Under the CBA, D'Narpo Electric agreed to collect deductions from the paychecks of its Union employees and to pay those deductions to Plaintiffs. (*Id.* at ¶¶ 12–15.) D'Narpo also agreed to file monthly remittance reports, detailing those payments, and to be bound by the trust agreements for the Health Plan, Pension Plan, Profit Sharing Plan, and Apprenticeship Plan (collectively, the "Funds"). Under the trust agreements, D'Narpo must, upon request, produce all books and records deemed necessary to conduct an audit of D'Narpo's records related to the obligations that it owes the Funds. (*Id.* at ¶ 13(d).) Last, under the CBA, D'Narpo Electric agreed to pay liquidated damages and all costs related to litigation as a consequence of its failure to comply with its contractual obligations. (*Id.* at ¶ 13(c).)

The Funds conducted a payroll audit for the period of January 1, 2018 through December 31, 2020. The audit, which was conducted by an outside auditor, revealed that D'Narpo Electric underpaid its contributions to the Funds and failed to remit wage deductions, totaling $246,778.26.[1] (*Id.* at ¶ 20; Doc. No. 9-4 at p. 3.) Under ERISA, the CBA, and the Funds' delinquency policy, delinquent contributions accrue interest at the Internal Revenue Service rate, and liquidated damages equal 10% of the delinquent principal. (Doc. No. 1 at ¶¶ 14–15.) D'Narpo Electric was sent a copy of the original audit on March 23, 2021, but neither Plaintiffs nor the auditor have received a response. (*Id.* at ¶¶ 22–23.)

---

[1] The Court uses the total from the updated audit report attached to Plaintiffs' motion for default judgment. (*See* Doc. No. 9-4 at p. 3.)

2

Plaintiffs also allege that Defendants Marissa Postiglione, Justin Postiglione, Sandy DeMuro, and Domenic DeMuro ("Defendant Officers") were principal officers of D'Narpo Electric.[2]  (*Id.* at ¶ 32.)  As such, they were charged with preparing, reviewing, and authorizing payments to the funds, and submitting monthly reports and contributions to Plaintiffs.  (*Id.*)  Pursuant to this authority, Defendant Officers exercised control over the money to be collected and remitted to Plaintiffs, and therefore, Plaintiffs argue, Defendant Officers are fiduciaries of the Funds under ERISA.  (*Id.* at ¶¶ 31–36.)  Plaintiffs maintain that Defendant Officers breached their fiduciary duties when they used the Funds' assets for personal and business obligations, and consequently, are jointly and severally liable under ERISA for the delinquent contributions owed to Plaintiffs.  (*Id.* at ¶¶ 38–41.)

Plaintiffs filed their complaint on April 27, 2021.  In Count I, all Plaintiffs seek judgment against D'Narpo Electric under the CBA and § 1132 of ERISA.  In Count II, the Funds seek judgment against Defendant Officers, alleging they are personally responsible for the portion of the principal contributions, interest, and liquidated damages due to the Funds.  Service was effectuated on Defendants on May 12, 2021.  (Doc. Nos. 3, 4, 5, 6, 7; H'rg Tr. at 17:10–20:13.)  When Defendants failed to timely respond to the complaint, the Clerk of the Court entered default against them.  And on September 17, 2021, Plaintiffs moved for default judgment.  (*See generally* Doc. No. 9.)

---

[2] During the default judgment hearing, Domenic DeMuro conceded that Sandy DeMuro and Marissa Postiglione are listed as the co-owners of D'Narpo Electric, even though "they don't have any knowledge about" the day-to-day running of the business.  (H'rg Tr. 23:16–24:1; *see also id.* at 33:1–5 ("They know nothing about the company, nothing.  When I tell you zero, zero.").)  Domenic DeMuro and Justin Postiglione "did everything day-to-day."  (*Id.* at 23:16–24:1 ("Everything that was needed to do, we did it.").)  Dominic and Justin also identified themselves as co-owners of D'Narpo Electric.  (*See* H'rg Tr. at 3:20–24.)

3

Although Defendants have not responded to the complaint, they have taken some steps to limit their outstanding debt while this case has been pending. After filing the complaint, Plaintiffs recovered on a surety taken out by Defendants in the amount of $75,000.00. (*Id.* at ¶ 11.) Defendants also made a payment of $18,039.17. (Doc. 9-5 at ¶ 7.) Plaintiffs have applied these payments to the outstanding debts as prioritized and described in the CBA.[3] (Doc. 9 at ¶¶ 12–26.) When those payments are considered, Plaintiffs argue that D'Narpo Electric owes Plaintiffs $194,078.41, the sum of $153,739.09 in unpaid principal, $15,661.49 in interest (as of August 31, 2021), and $24,677.83 in liquidated damages. (*Id.* at ¶ 12; *see also* H'rg Tr. at 20:14–21:15 (describing interest calculation).) In addition, Plaintiffs claim that the Defendant Officers are jointly and severally liable for the remaining amount owed to the Health Plan and the Pension Plan — $158,938.77, which includes $133,500.24 in unpaid principal, $12,088.51 in interest (as of August 31, 2021), and $19,047.88 in liquidated damages. (*Id.* at ¶ 28.) Last, Plaintiffs allege that all Defendants are jointly and severally liable for the attorney's fees and costs that Plaintiffs incurred bringing this suit. (*Id.*) That amount totals $9,012.71. (*Id.*)

The Court held a default judgment hearing on December 9, 2021, which Defendants Justin Postiglione and Domenik DeMuro attended. During the hearing the two men conceded that they know about the lawsuit and that they are delinquent. (*See, e.g.*, H'rg Tr. at 5:11–20 ("Listen, we are willing to pay it. We know it's owed.").)

---

[3] In his affidavit, Plaintiffs' counsel explains that per the CBA, the $93,039.17 recovered was first applied to the $20,384.67 owed to the Vacation Fund, as it has the first relevant priority. (Doc. No. 9-5 at ¶ 13.) The $52,210.71 owed to the Profit Sharing Plan was next in line. (*Id.* at ¶ 14.) That left a balance of $20,443.79, which was insufficient to cover the $30,991.16 owed to the Union payroll deductions/working dues, LMCC, NEIF, Apprentice Plan, IBEW Local 98/NECA Scholarship Fund, and the IBEW 98 Cope Fund. (*Id.* at ¶ 15.) Defendants still owe $10,547.37 to these funds, along with the full principal owed to the Pension Plan and Health Plan. (*Id.* at ¶¶ 15–16.) Because the Pension Plan and Health Plan are lowest in relevant priority, no moneys were paid to these plans. (*Id.*)

## II.     *Legal Standard*

Under Rule 55 of the Federal Rules of Civil Procedure, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a).  The clerk may then enter default judgment if "the plaintiff's claim is for a sum certain or a sum that can be made certain by computation." Fed. R. Civ. P. 55(b)(1).  In all other cases, the plaintiff must apply to the court for default judgment. Fed. R. Civ. P. 55(b)(2). "A default judgment must not differ in kind from, or exceed, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

Where a party moves for default judgment, the court evaluates the following three factors: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000); *see also, e.g., Int'l Union of Operating Eng'rs v. N. Abbonizio Contractors*, 134 F. Supp.3d 862 (E.D. Pa. 2015).  In evaluating these factors, the court accepts all factual allegations in the complaint as true. *Serv. Emps. Int'l Union v. ShamrockClean Inc.*, 325 F. Supp. 3d 631, 635 (E.D. Pa 2018).  However, "a party in default does not admit mere conclusions of law," so before considering the *Chamberlain* factors, we begin by considering "whether the unchallenged facts constitute a legitimate cause of action." *Id.* (quotation marks omitted).

## III.     *Plaintiffs Have Stated Claims Under ERISA.*

Here, Plaintiffs claim that D'Narpo Electric violated § 515 of ERISA and that the Defendant Officers violated § 404(a) of ERISA.

### A.     *Section 515 of ERISA*

Section 515 of ERISA mandates that employers make contributions to a multiemployer plan as required by the terms of a CBA.  29 U.S.C. § 1145.  If an employer fails to make their required contributions, a plan fiduciary has the right to seek judgment against the employer.  *Id.* § 1132(g)(2); *see e.g.*, *Int'l Union of Operating Eng'rs*, 134 F. Supp.3d at 865 ("ERISA provides that an employer obligated to make contributions to a multiemployer plan under the terms of a CBA must make those contributions in accordance with the terms and conditions of the agreement. . . .  A plan fiduciary is permitted to sue an employer who fails to make such required contributions." (cleaned up)).

In Count I of the complaint, Plaintiffs allege that Defendants failed to make contributions to Plaintiffs' plans under the terms of the CBA.  Under the parties' CBA, D'Narpo Electric agreed:

> (a) to deduct contractual deductions from the paychecks of employees covered by the collective bargaining agreement and to remit those amounts, and to pay contractually required contributions to the Health Plan, Pension Plan, Profit Sharing Plan, Apprenticeship Plan, LMCC, and Local 98 (collectively, the "Plaintiffs"). See Exhibit A, Article III, Sections 3,03, 3.04, 3.05, 3.06, 3.07, 3.08, and 3.09;
>
> (b) to file monthly remittance reports with the Plaintiffs listing all employees for whom contributions were due under the collective bargaining agreement and the total number of hours each such employee worked during that month. See Exhibit A, Article II, Section 2.03(d);
>
> (c) to pay liquidated damages and all costs of litigation, including attorneys' fees, expended to collect any amounts due as a consequence of the Employer's failure to comply with its contractual obligations as described in subparagraphs (a), (b), or (c). Exhibit A, Article III, Section 3.11(b); and
>
> (d) to be bound by the applicable trust agreements of the Health Plan, Pension Plan, Profit Sharing Plan, and Apprenticeship Plan

> (collectively, the "Funds"), which require the Employer to produce, upon request by all books and records deemed necessary to conduct an audit of the Employer's records concerning its obligations to the Funds. See Exhibit A, Article III, Sections 3.04, 3.05, 3.06, and 3.11; Exhibit B, the Health Plan Trust Agreement, at Section 3(b); Exhibit C, a January 3, 2008 Amendment to the Pension Plan at Section 4.3; Exhibit D, a January 3, 2008 Amendment to the Profit Sharing Plan, Section 3.3; Exhibit E, a January 3, 2008 Amendment to the Apprentice Plan, Section 4.3; Exhibit F, the International Brotherhood of Electrical Workers Local Union No. 98 Benefit Plans Policy for Collection of Delinquent Contributions, Payroll Audits, Return of Mistaken Contributions, and Bonding.

(Doc. 1 at ¶ 13; *see also* Doc. No. 1-3, the CBA.) Consistent with these obligations, D'Narpo Electric submitted a remittance report each month, which documented the amount that the company was required to pay to each fund. (Doc. No. 1 at ¶ 17.) Plaintiffs hired an outside auditor to audit the amounts reported and contributed by D'Narpo Electric from January 1, 2018 through December 31, 2020. (*Id.* at ¶ 19.) That audit revealed that D'Narpo Electric "underpaid its contributions and failed to remit required wage deductions." (*Id.* at ¶ 20.) A copy of the audit was attached to the complaint (*see* Doc. No. 1-9 at p. 3 (showing total unpaid principal as $237,411.37)), and a revised audit was attached to the motion for default judgment (*see* Doc. No. 9-4 (showing total unpaid principal as $246,778.26)).

These allegations show that under the CBA, D'Narpo Electric was required to contribute to several multi-employer plans, and it failed to do so. Therefore, we find that Plaintiffs have stated a claim for violations of § 515 of ERISA.

### B.    *Section 404(a) of ERISA*

In Count II of their Complaint, Plaintiffs contend that Defendant Officers were fiduciaries of the Funds, and they violated their fiduciary duties when they used plan assets for personal reasons. To establish that an individual has a fiduciary duty under ERISA, "unpaid contributions must be 'plan assets' and the individual must either exercise discretion in the

management of the plan or exercise any authority or control over the plan assets." *Trs. of the Nat'l Elevator Indus. Pension Plan v. Universal Elevator Corp.*, No. CIV.A. 11-3381, 2011 WL 5341008 at *2 (E.D. Pa. Nov. 3, 2011).

Here, Plaintiffs allege that Defendant Officers were fiduciaries of the Funds because they had control over the "disposition of money that became [ ] plan asset[s]." (Doc. No. 1 at ¶¶ 33, 35.) *See Trs. of the Nat'l Elevator Indus. Pension Plan*, 2011 WL 5341008, at *3 ("Regalado exercised control over his company's assets yet consistently failed to report and pay contributions as required . . . . Regalado's behavior renders him, an officer and owner of Universal, liable as a fiduciary under ERISA."). As the "principal officers" of D'Narpo Electric, the Defendant Officers "were ultimately responsible for preparing, reviewing, authorizing payment, and submitting monthly reports and contributions to the Plaintiffs." (*Id.* at ¶ 32.) And under the terms of the trust agreement for each fund, monies became trust assets once D'Narpo Electric's obligation arose to pay the required contributions. (Doc. No. 1 at ¶¶ 28–30.) Therefore, Plaintiffs have alleged that Defendant Officers exercised "authority and disposition of certain Trust Fund assets" (*id.* at ¶ 35), and are fiduciaries under ERISA.

Under Section 404(a) of ERISA, a fiduciary must "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. §§ 1104(a)(1)(A). Plaintiffs allege that Defendant Officers unlawfully used plan assets for their own personal or business obligations and for purposes other than providing benefits to each fund's participants and beneficiaries. (Doc. No. 1 at ¶¶ 37–39.) This is sufficient to state a claim under § 404(a). *See e.g.*, *Acosta v. Schwab*, No. 5:18-CV-3544, 2019 WL 7046916, at *6 (E.D. Pa. Dec. 20, 2019) ("[T]he

8

Complaint alleges that while the Schwabs were acting as fiduciaries the Plan suffered a significant loss . . . . [T]hese allegations, accepted as true, necessitate a finding that the Schwabs failed to act 'for the exclusive purpose of' providing benefits to Plan participants.  Indeed, through their conduct, Plan benefits have been lost or foreclosed to participants."); *Trs. of the Nat'l Elevator Indus. Pension Plan*, 2011 WL 5341008, at *3 ("[B]ecause Plaintiffs have alleged that Regalado has failed to timely report and remit contributions, he has breached his fiduciary duties."); *Acosta v. Finishing Pros., LLC*, No. 18-CV-00978-RPM-NYW, 2018 WL 6603641, at *6 (D. Colo. Nov. 20, 2018) ("Using employee contributions to pay the operating expenses of the company . . . breaches the duty of loyalty to act solely in the interest of the plan beneficiaries.").

### IV. The Chamberlain Factors Favor Entry of Default Judgment.

Because Plaintiffs have established claims under ERISA, the Court now considers whether default judgment on these claims is warranted under the *Chamberlain* factors.

First, the Court finds that Plaintiffs will be prejudiced if default judgment is denied because Plaintiffs are not receiving the monetary contributions owed to them. *See Trs. of the Nat'l Elevator Indus. Pension Plan*, 2011 WL 5341008 at *3 ("Clearly, Plaintiffs will suffer prejudice if this Court denies their motion for default judgment; Plaintiffs are not receiving payments owed them.").

Second, Defendants appear to have no litigable defense.  No Defendants in this matter have filed a responsive pleading despite having been served by Plaintiffs.  (Doc. No. 9 at ¶ 2.) The Court may also "presume that an absent defendant who has failed to answer has no meritorious defense . . . because '[i]t is not the court's responsibility to research the law and construct the parties' arguments for them.'"  *Acosta*, 2019 WL 7046916 at *8 (citations omitted).

9

Finally, the Court finds that Defendants' delay is due to their own culpable conduct. Defendants were timely served with the complaint, and during the default judgment hearing they admitted to knowing about the complaint and conceded they owe the amounts identified within it. (Doc. No. 9 at ¶ 2; H'rg Tr. at 5:11–20.) Consistent with this admission, Defendants sent Plaintiffs $18,039.17 after the complaint was filed. (Doc. No. 9-5 at ¶ 7.)

## V.     *Relief*

Because Plaintiffs are entitled to default judgment, the Court must now determine the relief to be awarded. Under ERISA, Plaintiffs are awarded the following in actions involving delinquent contributions:

> (A) the unpaid contributions,
>
> (B) interest on the unpaid contributions,
>
> (C) an amount equal to the greater of—
>
>> (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). The Court may rely on affidavits and other documented evidence to award the appropriate default judgment amount. *Pesotski v. Summa & Iezzi, Inc.*, No. 1:17-CV-00221, 2017 WL 3310951, at *4 (M.D. Pa. Aug. 3, 2017) (concluding that the plaintiffs' affidavits, copies of monthly remittance forms, and copies of notices sent to defendant "adequately establish the requested sum"). And judgment may be entered in an amount different

from that requested in the complaint, so long as it is not different in kind from the requested relief or in excess of the requested amount. Fed. R. Civ. P. 54(c).

In their motion, Plaintiffs seek judgment against Defendants for delinquent contributions less any payments recovered since the filing of the complaint, along with interest, liquidated damages, and attorney's fees. (Doc. No. 9 at pp. 6–8.) To support their requested relief, Plaintiffs have submitted an updated audit report and an affidavit by counsel for Plaintiffs, Ryan R. Sweeney. (*See* Doc. Nos. 9-4 & 9-5.) The Court finds that, with one exception, the audit report and affidavit adequately demonstrate the relief sought by Plaintiffs.[4]

Plaintiffs also seek attorney's fees and costs pursuant to 29 U.S.C. §1132(g)(2)(D). This fee request is supported by Attorney Sweeney's affidavit, which shows the hours worked by counsel throughout this litigation. (Doc. No. 9-5 at ¶ 18.) Mr. Sweeney is an associate attorney at Cleary, Josem & Trigiani, LLP, and his hourly rate in this case was $395 (*id.*), which is consistent with the market rate in the community — Philadelphia, *see Trs. of Nat'l Elec. Benefit Fund v. Mirarchi Bros., Inc.*, Civil Action No. 21-4399-KSM, 2022 WL 221610, at *6 (E.D. Pa. Jan. 24, 2022) (finding $445 was a reasonable hourly rate for defense counsel in ERISA recovery action); *Carpenters Health & Welfare Fund of Philadelphia & Vicinity v. Reyes*, No. CV 17-05107, 2018 WL 3437212, at *4 (E.D. Pa. July 16, 2018) (granting plaintiffs attorneys' fees and finding an hourly rate of $340 reasonable based on the prevailing market rate in the community). He worked 21 hours, reviewing background information, preparing the complaint and exhibits,

---

[4] After reviewing the complaint, the audit report, and the CBA, it is unclear what the audit report is referring to when it uses the phrase "job recovery" or why Defendants were required to withhold for this line item. (*See* Doc. No. 9-4 at p. 4 (showing that 3.25% of the wages for journeymen, foremen, and general foremen was owed for "job recovery).") And when asked about this figure at the default judgment hearing, Plaintiffs' counsel could not give an explanation. (*See* H'rg. Tr. at 26:4–27:6.) Because Plaintiffs have not met their burden of showing that Defendants were required to contribute funds for "job recovery," we decline to grant damages for that line item and adjust the outstanding unpaid principal accordingly.

corresponding with the Clerk of Court about an error in the Summons, attending post-complaint settlement discussions with Defendants, preparing the request for default, and drafting the motion for default judgment.  (*Id.*)  The Court finds that Plaintiffs' requested amount of $8,295 in attorney's fees is reasonable.  *See Bricklayers & Allied Craftworkers Loc. 1 of PA/DE v. WaterControl Servs., Inc.,* No. CIV.A. 09-3935, 2012 WL 3104437, at *7 (E.D. Pa. July 30, 2012) (approving attorney's fees in a motion for default judgment ERISA action).

## VI.  Conclusion

Because Plaintiffs have stated claims under ERISA, and the *Chamberlain* factors weigh in favor of granting default judgment, Plaintiffs' motion is granted and judgment entered in favor of Plaintiffs and against Defendants as follows:

1. Defendant D'Narpo Electric, LLC for:

    a. $143,561.85 in unpaid contributions due from January 2018 through December 2020, pursuant to the CBA, relevant trust agreements, and 29 U.S.C. § 1132(g)(2)(A);

    b. All interest accrued on the principal delinquency listed above as of the date of this Memorandum pursuant to the CBA and 29 U.S.C. § 1132(g)(2)(B);

    c. $14,356.19 in liquidated damages[5] pursuant to the CBA and 29 U.S.C. § 1132(g)(2)(C); and

    d. $9,012.72 in attorney's fees and costs, pursuant to the CBA and 29 U.S.C. § 1132(g)(2)(D).

---

[5] Plaintiffs assert that they are entitled to liquidated damages in the amount of 10% of the total delinquent unpaid principal as of December 31, 2020. (*See* Doc. No. 9 at ¶¶ 12, 28.)  In doing so, they fail to account for the approximately $93,000 recovered since that date.  We disagree with this accounting.  In calculating liquidated damages, the Court will award 10% of the amount of unpaid principal as determined by this Memorandum. (*Id.*; *see also* Doc. No. 9-4.)  *See* 29 U.S.C. § 1132(g)(2)(C)(ii) ("In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan . . . liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . *of the amount determined by the court*" for "unpaid contributions." (emphasis added)).

   2. Defendants Marissa Postiglione, Justin Postiglione, Sandy DeMuro, and Domenic DeMuro, jointly and severally liable with Defendant D'Narpo Electric for:

      a. $133,500.24 in unpaid contributions due from January 2018 through December 2020, pursuant to the CBA, relevant trust agreements, and 29 U.S.C. § 1132(g)(2)(A);

      b. All interest accrued on the principal delinquency listed above as of the date of this Memorandum pursuant to the CBA and 29 U.S.C. § 1132(g)(2)(B);

      c. $13,350.02 in liquidated damages[6] pursuant to the CBA and 29 U.S.C. § 1132(g)(2)(C); and

      d. $9,012.72 in attorney's fees and costs pursuant to the CBA and 29 U.S.C. § 1132(g)(2)(D).

An appropriate order follows.

---

[6] *See supra* n.5.